UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 13-3015(DSD/HB)

Wayne Anderson,

        Plaintiff,

v.                                                    **ORDER**

City of Coon Rapids,

        Defendant.


    Bryce M. Miller, Esq., Caitlin M. Grom, Esq. and Schaefer
Law Firm, LLC, 412 South Fourth Street, Suite 1050,
Minneapolis, MN 55415, counsel for plaintiff.

    Jana M. O'Leary Sullivan, Esq., League of Minnesota
Cities, 145 University Avenue West, St. Paul, MN 55103,
counsel for defendant.


    This matter is before the court upon the motion for summary judgment by defendant City of Coon Rapids (the City).  Based on a review of the file, record, and proceedings herein, and for the following reasons, the court grants the motion.


**BACKGROUND**

    This employment dispute arises out of the March 29, 2012, termination of plaintiff Wayne Anderson.  Anderson worked for the City as a career firefighter. Ex. 33. When Anderson turned 55, he became eligible for a monthly benefit paid by the Public Employees Retirement Association (PERA). Fulton Dep. at 91:7-10. As a union

member, he was subject to a collective bargaining agreement that allowed for a 23.33% payout of accumulated sick leave upon his severance.  Sullivan Aff. Ex. 7, at 12.

In 2005, Anderson began experiencing symptoms of endocarditis, a heart infection.  Anderson Dep. at 88:16-89:12.  He was diagnosed in May 2006, and he continues to be monitored for the condition. Id. at 90:1-92:12; 101:14-20.  In 2011, Anderson saw neurologist Moeen Masood for complaints regarding fatigue, gait instability, and muscle weakness.  Id. at 93:2-12; Grom Decl. Ex. A.  Masood ordered a muscle biopsy to rule out alternative causes for his symptoms.  Anderson Dep. at 101:2-9; Grom Decl. Ex. A.  On October 25, 2011, the City received a letter from Masood stating that Anderson could not return to work until November 25, 2011. Sullivan Aff. Ex. 12.

On November 15, 2011, Anderson left a voicemail with Jill Pocklington, the City's human resources coordinator, stating the following:

> I have to prepare myself for early retirement.  All of the medical tests are in.  I'm pretty sure Dr. [Halverston's] not going to let me come back.  But, you know, one thing at a time.

Sullivan Aff. Ex. 13; Anderson Dep. 131:23-132:6.  On December 1, 2011, Masood met with Anderson and explained that the biopsy results showed he had muscular dystrophy.  Anderson Dep. at 124:1-5, 131:12-13; Grom Ex. A.  Masood recommended that Anderson seek a second opinion.  Anderson Dep. 93:9-24; 138:10-17.

2

On December 2, 2011, Masood completed an attachment to Anderson's FMLA paperwork. Sullivan Aff. Ex. 11, at 3-6. Masood stated that Anderson had a permanent and potentially progressive muscle disease and that he could no longer work as a firefighter. Id. at 4-5. On December 8, 2011, Anderson met with Phillip Hoversten for a fitness-for-duty examination. Id. Ex. 16. Although Hoversten did not conduct new tests on Anderson, he reviewed Masood's findings and concluded that "Mr. Anderson is not fit for firefighting." Id.; Anderson Dep. 126:10-12.

Anderson then sought out John Piper, the head of the City's Fire Department, to inform him about the diagnosis. Anderson Dep. at 134:16-135:17. Anderson told Piper that he was going to seek care at the University of Minnesota. Id. at 138:6-22. Anderson alleges that Piper approached him less than one hour after the meeting and told him that Matt Fulton, the City Manager, was demanding his resignation. Id. at 124:20-25.

On January 2, 2012, Anderson sent a letter to Piper reiterating his diagnosis and discussing the prospect of future employment with the City. Sullivan Aff. Ex. 19. In particular, Anderson stated that the work limitations placed on him by Masood and Hoversten "forbid me from performing many of the essential job functions of the firefighters job description for the City of Coon Rapids." Id. at 1. The letter further stated that "there are no long-term light duty positions with the fire department" and "no

3

realistic ADA accommodations that could be made internally that would allow me to remain employed and in PERA P/F." <u>Id.</u> Anderson ended the letter by stating that he intended to use "the remaining accrued time off as allowed by past practice and the union contract." <u>Id.</u> at 3.

Anderson met with Fulton on January 5, 2012, to discuss his diagnosis and employment. Anderson Dep. at 140:9-18. Anderson informed Fulton that he had been diagnosed with a permanent disability and likely could not return to work. <u>Id.</u> at 156:2-7; 165:7-12. Fulton responded "then I'm separating you and I'm taking your sick time." <u>Id.</u> at 156:2-7. Anderson told Fulton "I'm in the union and I have rights," and Fulton replied "you're one of those, huh?" <u>Id.</u> Fulton then told Anderson that he was not being terminated, but asked if Anderson intended to retire on March 29, when he would turn 55. <u>Id.</u> at 156:17-21. Fulton told Anderson that he would not be eligible for full PERA benefits unless he waited until then to retire. <u>Id.</u> at 196:2-25. Anderson said he had no intention of retiring. <u>Id.</u> at 156:22.

Fulton brought Anderson to Piper's office and instructed Piper to look into options for light duty work. <u>Id.</u> at 155:20-22; 140:6-10. Following the meeting, Piper called Anderson four times to determine if he would retire when he turned 55. <u>Id.</u> at 147:15-25. Anderson alleges that these calls were made at the direction of Fulton. <u>Id.</u> Piper and Pocklington also called Anderson on one

4

occasion to discuss PERA and the potential penalties of early retirement.  Pocklington Dep. at 23:1-8.

On March 14, 2012, Fulton sent Anderson a letter summarizing his meetings with city officials.  Sullivan Aff. Ex. 20.  The letter provided that Anderson had "expressed an interest in delaying [his] resignation and using accrued sick leave until June 2012."  Id.  Fulton explained that extending leave beyond Anderson's birthday would "set a bad organizational precedent" and that Fulton would consider his "resignation from the City to be effective March 29, 2012."  Id.  Fulton further stated that "[i]f you believe I have misunderstood your intention to resign, please contact me immediately."  Id.

Anderson sent the City a letter dated March 15, 2012, which stated:

> Pursuant to our previous discussions, past practice and the Collective Bargaining Agreement, I am writing to inform you that I will utilize all accrued and accruing sick, vacation, holiday and other benefits to extend my employment with the City of Coon Rapids through December, 2012.  Upon exhaustion of all accrued and accruing benefits, I understand my employment with the City will end.

Sullivan Aff. Ex. 21.  The City responded to Anderson in a letter, stating that the request was contrary to past practices and the collective bargaining agreement and went "well beyond what is reasonable for the City to accommodate."  Id. Ex. 22.  Anderson was terminated on March 29, 2012.  Id. Ex. 25.  He was paid 349.95 hours of sick leave, which amounted to 23.33% of what he had

5

accrued since 2011.  Id.  He was replaced by a 28 year-old male. Grom Decl. Ex. B, at 8; Pocklington Dep. at 25:8-15.

Sometime in April 2012, Anderson visited Dr. Peter Karachunski at the University of Minnesota.  Id. at 190:9-18.  Karachunski determined that Anderson was misdiagnosed.  Id. at 192:3. Karachunski wrote a letter dated July 23, 2012, stating that Anderson had "no evidence of progressive muscle disease" and there was "no contraindication to his returning to work."  Sullivan Aff. Ex. 27.  Anderson placed the letter on the desks of Piper and the Assistant City Manager.  Anderson Dep. at 193:16-21; Stemwedel Dep. at 53:9-14.  Until he delivered the letter, Anderson had not told city officials that he was seeking a second opinion.  Anderson Dep. at 138:2-22.

On November 4, 2013, Anderson filed suit, alleging (1) disability discrimination, (2) age discrimination, and (3) retaliation and reprisal.  The City moves for summary judgment.

## DISCUSSION

## I.  Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of

the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party.  Id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. Id. at 255.  The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial.  Celotex, 477 U.S. at 324.  A party asserting that a genuine dispute exists - or cannot exist - about a material fact must cite "particular parts of materials in the record."  Fed. R. Civ. P. 56(c)(1)(A).  If a plaintiff cannot support each essential element of a claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial.  Celotex, 477 U.S. at 322-23.

## II.  Disability Discrimination

Anderson first alleges that the City discriminated against him on the basis of his disability in violation of the Americans with Disabilities Act (ADA) and the Minnesota Human Rights Act (MHRA).[1] Anderson may prevail on his claim under either by presenting direct evidence or by proceeding under the burden-shifting framework of

_____

[1] Except for one instance that is not relevant here, the ADA and MHRA are analyzed under the same standard.  See Kammueller v. Loomis, Fargo & Co., 383 F.3d 779, 784 (8th Cir. 2004).

7

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Because Anderson does not allege direct evidence of discrimination, the court will proceed under McDonnell Douglas.[2]

Anderson argues that the City failed to provide him with a reasonable accommodation by not allowing him to use his accrued sick leave to seek a second opinion.  Failure-to-accommodate claims are subject to a modified burden-shifting framework.  Fenney v. Dakota, Minn. & E. R.R. Co., 327 F.3d 707, 712 (8th Cir. 2003). Under this approach, the employee "must first make a facial showing that he has an ADA disability and that he has suffered adverse employment action."  Id.  "Then he must make a facial showing that he is a 'qualified individual.'"  Id.  "[A] qualified individual is an individual who, 'with or without reasonable accommodation, can

---

[2] To the extent Anderson argues that Fulton's comments during their meeting or that the phone calls made from Piper and Pocklington constitute direct evidence under any of his claims, the argument fails.  "Direct evidence is that which shows a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action."  St. Martin v. City of St. Paul, 680 F.3d 1027, 1033 (8th Cir. 2012) (citation and internal quotation marks omitted).  Direct evidence "most often comprises remarks made by decisionmakers that reflect, without inference, a discriminatory bias."  McCullough v. Univ. of Ark. for Med. Scis., 559 F.3d 855, 861 (8th Cir. 2012).  Although the communications pertained to Anderson's retirement status and age, the court does not find that they reflect, without inference, a discriminatory or retaliatory bias.

perform the essential functions of the employment position that such individual holds.'" Browning v. Libery Mut. Ins. Co., 178 F.3d 1043, 1047 (8th Cir. 1999) (quoting 42 U.S.C. § 12111(8)).

There is no dispute that, after Anderson's initial diagnosis and before his termination, everyone agreed he could no longer work as a firefighter. Anderson argues, however, that because his diagnosis was reversed, he would have been able to perform his duties had the City given him time to seek a second opinion. A "leave of absence might, in some circumstances, be a reasonable accommodation." Brannon v. Luco Mop Co., 521 F.3d 843, 849 (8th Cir. 2008). Leave is not reasonable under the ADA, however, where "at the time of termination [the employee] had no idea when, if ever, [he] would be able to return ...." Peyton v. Fred's Stores of Ark., 561 F.3d 900, 903 (8th Cir. 2009); see also Graves v. Finch Pruyn & Co., Inc., 457 F.3d 181, 186 n.6 (2d Cir. 2006) (noting most courts hold that leave "may be a reasonable accommodation where it is finite and will be reasonably likely to enable the employee to return to work").

Neither Anderson nor the City had reason to doubt the medical opinions of Masood and Hoversten, and the reversal of the diagnosis could not have been reasonably predicted. See Browning, 178 F.3d at 1049 (stating that employers are not expected to "predict the degree of success of an employee's recovery from an illness or injury"). Moreover, Anderson did not tell city officials that he

was seeking a second opinion.[3]   Rather, he informed Piper that he was receiving care at the University of Minnesota, and he expected officials to infer that he was seeking more than just treatment. Anderson Dep. at 138:18-22; 150:19-152:6.  See Broadwater v. Minn. Dep't of Human Servs., 22 F. Supp. 3d 989, 998 (D. Minn. 2014) ("The ADA places the initial burden on the employee to request accommodation.").[4]

Anderson further argues, however, that letting him use his accrued sick leave would have been reasonable because the City had recently granted a similar request to a younger employee who was recovering from a stroke.  See Mallon v. U.S. Physical Therapy, Ltd., 395 F. Supp. 2d 810, 820 (D. Minn. 2005) (stating that a requested leave was reasonable where the employer had granted

---

[3] Even if Anderson informed others that he was getting a second opinion, it is still not apparent that he wanted to use his accrued sick leave for this purpose.  Rather, the record shows that Anderson simply thought he was entitled to all of his accrued sick leave, pursuant to the collective bargaining agreement and past practices.  See Sullivan Aff. Ex. 21.

[4] Anderson also argues that the City did not understand his request because it failed to engage in an interactive process.  The court disagrees.   "To establish that an employer failed to participate in an interactive process, a disabled employee must show ... the employee requested accommodation or assistance for his or her disability ... and the employee could not have been reasonably accommodated but for the employer's lack of good faith." Cravens v. Blue Cross & Blue Shield of Kan. City, 214 F.3d 1011, 1021 (8th Cir. 2000).  Anderson, his doctor, and city officials all agreed that no reasonable accommodation existed for Anderson to return to work. As a result, no reasonable jury could find that the City demonstrated bad faith, and any claim premised on a failure to participate in an interactive process fails.

similar requests).  The court disagrees.  In contrast to Anderson's situation, the City understood that the other employee might be able to return to work.  Sullivan Aff. Ex. 32, at 3, 5-6, 10; Fulton Dep. at 68:20-24.[5]  The court finds that Anderson has not established a prima facie case of disability discrimination, and summary judgment is warranted.

## III.  Age Discrimination

Anderson next alleges that the City discriminated against him on the basis of his age in violation of the Age Discrimination in Employment Act (ADEA) and the MHRA.[6]  "When, as here, a plaintiff relies on circumstantial rather than direct evidence of age discrimination, the case is considered under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 [(1973)]."  Rahlf v. Mo-Tech Corp., 642 F.3d 633, 637 (8th Cir. 2011).  To establish a prima facie case of age discrimination, Anderson "must show that (1) he is over 40 years old, (2) he met the applicable job qualifications, (3) he suffered an adverse employment action, and (4) there is some additional evidence that age was a factor in the employer's termination decision."  Id.  "If

_____

[5] The City eventually determined that the employee was not fit for duty.  Fulton Dep. at 69:1-9; Piper Dep. at 17:7-13; Sullivan Aff. Ex. 32, at 16-18.

[6] The ADEA and MHRA are analyzed under the same standard.  See Chambers v. Metro. Prop. & Cas. Ins. Co., 351 F.3d 848, 855 (8th Cir. 2003).  The ADEA protects employees who are 40 years or older, while the MHRA protects employees who are 18 years or older.  See 29 U.S.C. § 631(a); Minn. Stat. § 363A.03, subd. 2.

[Anderson] establishes a prima facie case, the burden shifts to [the City] to provide a legitimate, nondiscriminatory reason for the [adverse employment action]." Haigh v. Gelita USA, Inc., 632 F.3d 464, 468 (8th Cir. 2011). "Finally, if [the City] provides such a reason, the burden returns to [Anderson] to prove [the City's] reason was mere pretext for discrimination." Id.

The court finds that Anderson has not established a prima facie case of age discrimination. Anderson notes that the comments made by Fulton during their January 5, 2012, meeting focused on his retirement status and pension eligibility. This simply shows, however, that Fulton was attempting to determine how to offer Anderson full PERA benefits. "[E]mployment decisions motivated by factors other than age (such as salary, seniority, or retirement eligibility), even when such factors correlate with age, do not constitute age discrimination." EEOC v. McDonnell Douglas Corp., 191 F.3d 948, 952 (8th Cir. 1999). Moreover, the record does not support a finding that Fulton was using PERA eligibility as a proxy for age. See Tramp v. Assoc. Underwriters, Inc., 768 F.3d 793, 801 (8th Cir. 2014) (holding that a reasonable jury could find that an employer's desire to reduce health insurance costs was not "analytically distinct" from considerations of employee age). Although age and PERA eligibility are correlated, the record shows that city officials, in attempting to determine when Anderson would retire, were "wholly motivated by factors other than age." Id.

(quoting Hazen Paper Co. v. Biggins, 507 U.S. 604, 611 (1993)).  As a result, Anderson does not show that age "had a determinative influence"[5] on the decision to terminate and deny him sick leave. Hazen Paper Co., 507 U.S. at 610.

Even if Anderson could establish a prima facie case of age discrimination, the City provides a legitimate, nondiscriminatory reason for its decisions.  At the time of his termination, everyone - including Anderson - agreed that he could not perform the essential duties of a firefighter.  See Barket v. NexitiaOne, LLC, No. 01-278, 2002 WL 1457631, at *5 (D. Minn. July 3, 2002). Moreover, denying Anderson's additional sick leave request was in accordance with the collective bargaining agreement.  As a result, the burden shifts back to Anderson to prove that the City's reasons are pretextual.

"[T]he showing of pretext ... requires more than merely discrediting an employer's asserted reasoning for terminating an employee.  A plaintiff must also demonstrate that the circumstances permit a reasonable inference of discriminatory animus."  Haigh, 632 F.3d at 470 (internal quotation marks omitted).  Anderson argues that he was treated less favorably than the previously

---

[5] It is unsettled whether an age discrimination claim under the MHRA requires "but for" or merely "motivating factor" causation.  See Gifford v. Target Corp., No. 10-2049, 2011 WL 3876420, at *7 n.5 (D. Minn. Aug. 31, 2011).  This distinction is immaterial for purposes of this motion, because the court finds that Anderson has put forth no evidence showing that age was a motivating factor in the City's decisions.

referenced younger employee.  As already stated, however, the City treated Anderson differently because there was no reason to believe he would be able to return to work.  See <u>Bone v. G4S Youth Servs., LLC</u>, 686 F.3d 948, 956 (8th Cir. 2012) (stating that a comparator must be "similarly situated in all relevant respects ... without any mitigating or distinguishing circumstances" (citation and internal quotation marks omitted)).  Further, the court does not find it material that Anderson was replaced by a 28 year-old male.  See <u>Carraher v. Target Corp.</u>, 503 F.3d 714, 719 (8th Cir. 2007) (holding the fact that an employee was replaced by a younger individual is insufficient on its own to show pretext).  As a result, Anderson has not presented sufficient evidence from which a reasonable jury could determine that the City discriminated against him on the basis of his age, and summary judgment is warranted.

## IV.  Retaliation

Anderson next argues a claim for retaliation under the ADA, Title VII, and the MHRA.  To establish a prima facie case of retaliation under any of these statutes, Anderson must show that (1) he engaged in statutorily protected activity, (2) he suffered an adverse employment action, and (3) a causal connection exists between the protected activity and the adverse employment action.  <u>Fercello v. Cnty. of Ramsey</u>, 612 F.3d 1069, 1077-78 (8th Cir. 2010); <u>Thomas v. Corwin</u>, 483 F.3d 516, 530 (8th Cir. 2007).

14

Anderson fails to establish the requisite causal connection. The City terminated Anderson and denied him his requested sick leave more than two months after the January 5, 2012, meeting with Fulton.  See Tyler v. Univ. of Ark. Bd. of Trs., 628 F.3d 980, 986 (8th Cir. 2011) (holding that an inference of retaliation "vanishes altogether when the time gap between the protected activity and the adverse employment action is measured in months").  Moreover, everyone agreed before the meeting that Anderson could no longer work as a firefighter.  Indeed, Anderson indicated multiple times that he did not intend to return.  As a result, the court determines that no reasonable jury could find that the City retaliated against Anderson, and summary judgment is warranted.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that defendant's motion for summary judgment [ECF No. 19] is granted. **LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  January 27, 2015

s/David S. Doty_____
David S. Doty, Judge
United States District Court

15